UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

_____
                                    )
In re:                              )         Chapter 7
                                    )         Case No. 10-41645-MSH
MATTHEW A. CORRIDORI                )
KARI A. CORRIDORI                   )
                                    )
Debtors.                            )
                                    )
_____)

**MEMORANDUM OF DECISION ON UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE PURSUANT TO 11 U.S.C. §707(b)(3)**

This matter came before me for hearing on the United States Trustee's ("UST") Motion to Dismiss Case Pursuant to 11 U.S.C. §707(b)(3). The UST seeks dismissal of this case for these below-median income Debtors because, but for Mr. Corridori's contribution of $1,373 a month to his 401(k) retirement plan and Mrs. Corridori's far more modest contribution of $67 to her retirement plan, the Debtors would have positive income with which to repay a portion of their debts. The Debtors oppose the motion on the grounds that since retirement contributions are "untouchable" in Chapter 13 by virtue of 11 U.S.C. §541(b)(7), they may not be considered in determining whether the Debtors have the ability to repay a portion of their debts.

The Debtors, who have three children age 7, 9, and 11, filed their voluntary petition pursuant to Chapter 7 of the Bankruptcy Code on April 2, 2010. Their Statement of Monthly Income and Means Test Calculation (the "Means Test") indicates that the Debtors' income is below the median for a family of five. Their Schedules I and J reveal that they have net monthly income of $5,096 and monthly expenses of $5,553, leaving them with a negative monthly income of $457. Mr. Corridori earns gross income of $5,143 in non-overtime monthly wages and an estimated $1,781 in monthly overtime; Mrs. Corridori earns gross income of $2,006 a

month and reports no overtime wages. Mr. Corridori, who, according to Schedule B has $245,000 in his retirement account (all of which he claims as exempt), contributes $1,373 a month under his retirement plan; Mrs. Corridori, who reports that there is $3,500 in her retirement account, makes monthly contributions to that account of $67.

The UST seeks dismissal of this case under the totality of the circumstances test by which abuse under §707(b)(3)(A) is measured because, if the Debtors did not make their voluntary retirement plan contributions, they would have positive monthly income of approximately $943 with which to repay a portion of their $161,676 unsecured, ,primarily consumer debt.[1] That the Debtors could exclude their retirement contributions from their disposable income for purposes of funding a Chapter 13 plan is irrelevant to the UST but is the cornerstone of the Debtors' opposition. See 11 U.S.C. §541(b)(7) (excluding contributions to qualified retirement plans from disposable income under §1325(b)(2)).

The totality of the circumstances test as applied by courts prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") was carried forward under BAPCPA. In re Boule, 2009 WL 722025 (Bankr. D. Mass. March 18, 2009); In re Lenton, 358 B.R. 651, 664 (Bankr. E.D.Pa. 2006) (citing a pre-BAPCPA Conference Committee Report for a prior draft of § 707(b)(3) that is identical to the version contained in BAPCPA).[2] The First Circuit Court of Appeals in In re Lamanna, 153 F.3d 1, 4 (1st Cir. 1998),

---

[1] The UST also alleges that the Debtors may have underreported their income. He is not seeking to have the case dismissed as a bad faith filing under §707(b)(3)(B), however.

[2] The December 7, 2000 Conference Committee Report to the Senate, cited in Lenton, provides in relevant part:

> The "bad faith" and "totality of the circumstances" of the debtor's situation is adopted as an appropriate standard. It is intended that all forms of inappropriate and abusive debtor use of Chapter 7 will be covered by this standard, whether because of the debtor's conduct or the debtor's ability to pay. If a debtor's case would be dismissed today for

2

a case decided under the more rigorous pre-BAPCPA "substantial abuse" standard, adopted a series of non-exhaustive factors for determining substantial abuse set forth in In re Krohn, 886 F.2d 123, 126 (6th Cir. 1989). Those factors include what is generally recognized as the primary, albeit not necessarily conclusive, factor, namely the debtor's "ability to repay his debts out of future earnings," as well as such other factors as "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code," and whether he was forced into Chapter 7 by unforeseen or catastrophic events. Lamanna, 153 F.3d at 4.

The Debtors in this case have already amassed substantial retirement savings and there is nothing to indicate that after the term of a hypothetical Chapter 13 plan they would be unable to continue to accumulate additional retirement funds. Moreover, Mr. Corridori's monthly income appears to be stable. He has worked for his current employer for over 11 years and the Statement of Financial Affairs reflects that his 2009 gross income from his primary employment was $91,840, and his 2008 gross income was $83,518. Annualizing his current gross income reported on Schedule I indicates that his income in 2010 will be $83,388. He also earns a small amount of additional income as a football referee. Mrs. Corridori's income is also relatively stable as she has worked for her current employer for almost six years. Her gross income in 2008 was $27,513, and in 2009 it was $21,451. Annualizing her current monthly income indicates she will earn $24,072 in 2010.

---

"substantial abuse" as in *In re Lamanna*, 153 F.3d 1 (1st Cir. 1998), it is intended that the case should be subject to dismissal under H.R. 2415. Cases which have decided that a debtor's ability to pay should not be considered when determining abuse, or can be outweighed if the debtor is otherwise acting in good faith, are intended to be overruled. In dealing with ability to pay cases which are abusive, the presumption of abuse and the safe harbor protecting debtors from application of the presumption will not be relevant.

*Bankruptcy Reform Act of 2000-Conference Report,* 146 Cong. Rec. S 11683-02, S 11703 (2000)

The Debtors argue that their ability to pay must be filtered through the lens of a hypothetical Chapter 13 case and that in a hypothetical Chapter 13 case they would be free to continue their retirement contributions which would thus render them unable to fund a plan. The Debtors' reasoning is flawed. First, ability to pay under a hypothetical Chapter 13 plan is but one factor in evaluating the totality of the circumstances in connection with a determination of abuse. Furthermore, just because the Debtors may not be able to confirm a hypothetical Chapter 13 plan does not mean that they are entitled to relief under Chapter 7. As the Krohn court noted:

> [t]here is no constitutional right to a bankruptcy discharge, and the "fresh start" provided for by the Code is a creature of congressional policy. Congress, within the limits set by the Constitution, is free to deny access to bankruptcy as it sees fit. Here, the failure to specifically provide for linkage between Chapters 7 and 13 is evidence that Congress believed there are some circumstances where it would not be equitable to grant a particular debtor a fresh start.

Krohn, 886 F.2d at 127. As the court observed in In re Shelton, 370 B.R. 861, 867 (Bankr. N.D. Ga. 2007), although Congress excluded retirement contributions from the determination of disposable income in Chapter 13 cases under BAPCPA, the independent requirement under §1325(a)(3) that the court determine that a Chapter 13 plan be proposed in good faith remains fully intact. The Chapter 13 debtor in Shelton proposed a zero percent plan to unsecured creditors while contributing $655 a month to his retirement plan. Over the life of the plan he would have contributed $39,300 to his retirement account while his unsecured creditors whose debts totaled $89,237 would receive nothing. These facts led the court to conclude his plan was not proposed in good faith.

Similarly the Debtors before me appear poised to contribute $86,400 to their retirement accounts over the next five years while seeking a Chapter 7 discharge in what appears to be a no-asset case. It would be inequitable to grant the Debtors relief under Chapter 7 at the expense of their creditors, whom they could, but choose not to, pay in whole or in part.

4

In light of the totality of the circumstances, I find that granting the Debtors relief in this Chapter 7 case is an abuse and, therefore, I will grant the UST's Motion to Dismiss. Dismissal will be effective in 14 days to give the Debtors an opportunity to consider whether to convert this case to a case under Chapter 13 of the Bankruptcy Code.

A separate order will enter.

Dated: September 1, 2010

_____
Melvin S. Hoffman
United States Bankruptcy Judge